# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CLEMENTINE COMPANY, LLC d/b/a THE THEATER CENTER; PLAYERS THEATRE MANAGEMENT CORP. d/b/a THE PLAYERS THEATRE; WEST END ARTISTS COMPANY d/b/a THE ACTORS TEMPLE THEATRE; SOHO PLAYHOUSE INC. d/b/a SOHO PLAYHOUSE; and CARAL LTD. d/b/a BROADWAY COMEDY CLUB,<br><br>                                        Plaintiffs,<br><br>            -against-<br><br>BILL DE BLASIO, in his official capacity as Mayor of New York City,<br><br>                                        Defendant. | No. _____<br><br>**COMPLAINT** |

Plaintiffs The Clementine Company, LLC d/b/a The Theater Center; Players Theatre Management Corp. d/b/a The Players Theatre; West End Artists Company d/b/a The Actors Temple Theatre; SoHo Playhouse Inc. d/b/a SoHo Playhouse; and Caral Ltd. d/b/a Broadway Comedy Club for their Complaint against Defendant Mayor Bill de Blasio, allege as follows:

## INTRODUCTION

1.      This civil rights lawsuit seeks to vindicate the constitutional rights of free speech and equal protection for the Plaintiff theaters and comedy clubs, which

have been subject to unequal restrictions for a year and a half and are still being treated worse than similarly situated venues.

2.     Plaintiffs are all small venue theaters and comedy clubs with seating capacity of 199 seats or less. Plaintiffs are all located in Manhattan.

3.     Plaintiffs were shut down from March 16, 2020, through April 2, 2021, pursuant to Executive Orders issued by New York Governor Andrew Cuomo which were adopted and enforced by Defendant. Subsequently, Plaintiffs were subjected to more onerous capacity limits than many other types of comparable businesses and venues.

4.     After a brief lacuna without restrictions and mandates, the City of New York has once again imposed unequal restrictions that form the basis for this lawsuit, in the form of a vaccine mandate called Key to NYC. The mandate applies differently to venues depending only on who is speaking and what they are saying. Thus, Plaintiffs are prohibited from admitting customers without requiring proof of vaccination when putting on theater or comedy shows. But no proof of vaccination is required for admission into the same theaters when church services are occurring there.

5.     In violation of the First and Fourteenth Amendments to the United States Constitution, Defendant's order discriminates against Plaintiffs by singling out theaters and comedy clubs for more restrictive treatment based on the content of speech that theaters and comedy clubs host and the identity of the speaker as a theater or comedy club.

6.     For small venue theaters and comedy clubs like Plaintiffs, enforcing this unequal mandate is burdensome and further stigmatizes businesses that are already struggling to bounce back from being shut down for a year.

7.     Plaintiffs seek declaratory and injunctive relief to remedy Defendant's violation of the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs seek only to be allowed to operate on equal terms as other similar venues, without regard to the content of the speech or the identity of the speakers that they host.

8.     The same rules should apply to all speakers, regardless of their message.

## JURISDICTION AND VENUE

9.     Plaintiffs bring this lawsuit pursuant to 42 U.S.C. § 1983 for the violation of rights secured by the First and Fourteenth Amendments to the United States Constitution.

10.     Jurisdiction over Plaintiffs' claims is proper under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201–02 (Declaratory Judgment Act).

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) on the ground that all or a substantial part of the acts giving rise to Plaintiffs' claims occurred in the Southern District of New York.

## PARTIES

12.     Plaintiff The Clementine Company, LLC d/b/a The Theater Center is a New York Limited Liability Company with its principal place of business in the Borough of Manhattan, New York. At that location, Plaintiff operates two theaters,

the Jerry Orbach Theater and the Anne L. Bernstein Theater, each of which has a seating capacity of 199. Because of Executive Orders adopted and enforced by Defendant, both theaters were shut down to theatrical performances from March 16, 2020, to April 2, 2021. Both theaters are now subject to the Key to NYC vaccine mandate.

13.     Owner and General Manager of The Clementine Company, Catherine Russell, is also the lead actress in the play "Perfect Crime" which is the longest-running non-musical play in the history of New York theater and is featured in the Bernstein Theater. On Sunday mornings, the Orbach Theater is not subject to the Key to NYC vaccine mandate because it is rented by a church, which conducts worship services there.

14.     Plaintiff Players Theatre Management Corp. d/b/a The Players Theatre is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. The main stage of the Players Theatre has a capacity of 115 and it has a smaller theatre with a capacity of 50 seats. Because of Executive Orders adopted and enforced by Defendant, The Players Theatre was shut down from March 16, 2020, to April 2, 2021. It is now subject to the Key to NYC vaccine mandate.

15.     Plaintiff West End Artists Company d/b/a The Actors Temple Theatre is a New York Company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates The Actors Temple Theatre with a seating capacity of 199. Because of Executive Orders adopted and enforced by Defendant, The Actors Temple Theatre was shut down to theatrical performances from March 16,

2020, to April 2, 2021. It is now subject to the Key to NYC vaccine mandate. The Actors Temple Theatre also operates as a non-denominational Jewish synagogue and is not subject to the Key to NYC vaccine mandate when those services are occurring.

16.     Plaintiff SoHo Playhouse Inc. d/b/a SoHo Playhouse is a New York Corporation with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the SoHo Playhouse with a mainstage seating capacity of 178 and two smaller theaters with a 65- and 50-seat capacity. The SoHo Playhouse also regularly rents out its space to be used for events such as dinner parties. Because of Executive Orders adopted and enforced by Defendant, SoHo Playhouse was shut down from March 16, 2020, to April 2, 2021. It is now subject to the Key to NYC vaccine mandate.

17.     Plaintiff Caral Ltd. d/b/a Broadway Comedy Club is a New York private company with its principal place of business in the Borough of Manhattan, New York. Plaintiff operates the Broadway Comedy Club with a seating capacity of 160. Broadway Comedy Club is owned by legendary comedian Al Martin. Because of Executive Orders adopted and enforced by Defendant, the Broadway Comedy Club was shut down from March 16, 2020, to April 2, 2021. It is now subject to the Key to NYC vaccine mandate.

18.     Defendant Bill de Blasio is the Mayor of New York City. In that capacity, he signed and is responsible for enforcing Executive Orders complained of in this action, which continue to restrict Plaintiffs' ability to host speech on the same terms as other venues. Mayor de Blasio is sued in his official capacity, pursuant to *Ex parte*

*Young*, 209 U.S. 123 (1908), for depriving Plaintiffs of their First and Fourteenth Amendment rights under color of state law by enforcing the Executive Orders complained of in this action.

## STATEMENT OF FACTS

### I.    New York's History of COVID Business Restrictions

19.    For almost a year and a half, Defendant has enforced a series of Executive Orders that have restricted economic liberty, freedom of speech, and freedom of association in New York City. But the negative impact of these Executive Orders has not been felt in a uniform or even-handed fashion.

20.    In March 2020, in response to the COVID-19 pandemic, Governor Cuomo issued a series of Executive Orders known as "New York on PAUSE" which resulted in the shutdown of all "non-essential" businesses in the State, including theaters and comedy clubs. (Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, 202.13, 202.14, 202.28, and 202.31.)

21.    Mayor de Blasio declared a State of Emergency on March 12, 2020. He issued Executive Order 100 on March 16, 2020, closing Plaintiffs' venues and other businesses in New York City and directing New York City officials to enforce the Governor's Executive Orders.

22.    Mayor de Blasio extended local enforcement of the Governor's Executive Orders as recently as April 29, 2021 (Executive Order 197).

23.    Mayor de Blasio extended the state of emergency as recently as September 14, 2021 (Executive Order 238).

6

24.     Plaintiffs were forced by these Executive Orders to shut down their theaters until further notice on March 16, 2020.

25.     What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity became open-ended and ongoing restrictions aimed at stopping the spread of an infectious disease.

## II.     New York's Consistent Unequal Treatment of Plaintiffs

26.     From the beginning of the pandemic, City and State Executive Orders treated theaters and comedy clubs more stringently than other businesses, even though the First Amendment protects the expressive activity that defines these venues.

27.     Governor Cuomo gradually allowed shut-down businesses to reopen in one of four phases (*see, e.g.*, Executive Orders 202.34, 202.35). Most businesses were allowed to reopen in Phases Two or Three, including indoor restaurants. But theaters and comedy clubs were placed in Phase Four, the last tier for reopening. Subsequently, many other businesses in Phase Four were allowed to reopen (including gyms, indoor amusement, and family entertainment facilities), but theaters and comedy clubs were not.

28.     On June 26, 2020, the Governor issued an Executive Order which allowed theaters and comedy clubs to reopen in some parts of the state but not New York City (Executive Order 202.45).

29.     In October and November 2020, in response to rising COVID-19 cases, the Governor once again restricted gatherings, which resulted in the shutdown of

theaters and comedy clubs throughout the state once more. Theaters and comedy clubs in New York City had never been allowed to reopen in the first place (Executive Orders 202.68, 202.74). Mayor de Blasio supported even more aggressive shutdown measures but was overridden by Governor Cuomo.

30.     In December 2020, the Governor allowed a variety of businesses such as gyms and fitness centers to stay open in most of the state, while keeping theaters and comedy clubs closed, even though gyms, fitness centers, theaters, and comedy clubs had originally been in the same reopening tier (Executive Order 202.81).

31.     On March 21, 2021, Governor Cuomo issued Executive Order 202.98, which allowed theaters and comedy clubs to reopen starting April 2, 2021. But they were not allowed to reopen on equal terms with similarly situated businesses and activities. Most other businesses were allowed to open at 50% or greater capacity, including indoor food services and dining, large events such as wedding receptions or conferences, and houses of worship, but theaters and comedy clubs were restricted to 33% capacity.

32.     City and State officials have also consistently treated houses of worship more favorably than theaters and comedy clubs. For instance, in October 2020 in the hardest hit parts of the state, theaters and comedy clubs were shut down completely while houses of worship were subjected to a capacity limit of 25% with a hard cap of 10 people (Executive Order 202.68).

33.     The United States Supreme Court enjoined enforcement of the capacity limits on houses of worship pending appeal because religious worship was treated

less favorable than commercial activity, such as office work and shopping. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). The Second Circuit subsequently ordered a preliminary injunction against the unequal capacity limits, *Agudath Israel of Am. v. Cuomo*, Nos. 20-3572, 20-3590, 2020 WL 7691715, at *9 (2d Cir. 2020), which was issued by the Eastern District of New York on January 19, 2021. *Agudath Israel of Am. v. Cuomo*, No. 20-cv-04834, ECF No. 44 (E.D.N.Y. Feb. 9, 2021) (making injunction permanent). Governor Cuomo subsequently agreed to a permanent injunction against enforcement of the 25% and 33% capacity limits. *Id.* Following the issuance of the injunction, houses of worship were allowed to open at 50% capacity with no numerical limits.

## III.    Plaintiffs Finally Allowed to Reopen

34.    On May 3, 2021, Governor Cuomo announced a plan to lift capacity limits from most businesses in New York, including theaters, as of May 19, 2021.

35.    In preparation for reopening, Plaintiffs took extensive safety precautions to minimize the risk that patrons would be exposed to COVID-19. These measures included: (a) mandating that all employees and actors be tested for COVID-19 according to New York guidelines, as well as vaccinated; (b) requiring all patrons and staff to have a temperature check before entering the premises; (c) requiring that masks be worn throughout the theater; (d) implementing seating policies that facilitate spacing groups and ensuring that they are always a minimum of six feet apart; (e) installing plexiglass barricades between employees and patrons; (f) placing

hand sanitizer stations throughout the theater; and (g) installing air filters and air scrubbers to disinfect and improve air flow.

36.     From May 19, 2021, to June 16, 2021, theaters in New York were allowed to reopen without capacity limits. However, even during that brief period theaters were subject to disparities in the health and safety requirements on social distancing.[1]

37.     From June 16, 2021 to August 3, 2021, theaters were free from industry-specific social distancing requirements but continued to be subject to other restrictions such as enforcing a requirement that unvaccinated patrons wear a mask.

## IV.     With the "Key to NYC," Defendant Is Again Treating Plaintiffs Unequally

38.     On August 3, 2021, Mayor de Blasio announced that proof of vaccination would be mandatory for patrons and staff at some indoor businesses, including Plaintiffs' theaters and comedy clubs, starting on August 17, 2021. (Executive Orders 228, 237, 239).

39.     The City began enforcing this Key to NYC vaccine mandate in full force on September 13, 2021, with a first violation for failing to check vaccine status subjected to a $1,000 fine, a second violation subjected to a $2,000 fine, and

---

[1] Interim Guidance for Small and Medium Scale Performing Arts & Entertainment During the COVID-19 Public Health Emergency, https://www.governor.ny.gov/sites/default/files/atoms/files/Small_and_Medium_Perf orming_Arts_Detailed_Guidance.pdf; Interim Guidance for Religious & Funeral Services During the COVID-19 Public Health Emergency, https://www.governor.ny.gov/sites/default/files/atoms/files/ReligiousandFuneralServ icesMasterGuidance.pdf.

subsequent violations subjected to a $5,000 fine each. Each instance when a covered entity fails to check an individual's vaccination status is a separate violation. This means that if Plaintiffs do not check vaccination status during a single performance, they may be subject to hundreds of thousands of dollars in fines. Under Section 562 of the New York City Charter, a failure to comply may also be prosecuted as a criminal misdemeanor.

40.    The new Key to NYC vaccine mandate does not apply to worship services, schools, or community centers.[2]

41.    Some worship services in New York City meet in buildings that were once used as theaters. But theatrical performances are subject to more stringent restrictions than worship services, even if they occur in the same or a nearly identical space.

42.    On Sunday mornings, Plaintiff Clementine Company's Orbach Theater is rented by a church, which conducts worship services.

43.    Plaintiff Clementine Company's Owner and General Manager, Ms. Russell, has spoken to the pastor of the church who has admitted that some members of the congregation are not vaccinated. Ms. Russell has also seen people not

---

[2] According to an online FAQ put out by the city: "Indoor dining, entertainment and fitness located in the following settings are exempted from Key to NYC: • Private residential buildings when those settings are available only to residents • Office buildings when those settings are available only to office staff • Pre-K through grade 12 schools • Senior centers • Community Centers • Child care programs." Frequently Asked Questions Key to NYC (Aug. 25, 2021), https://www1.nyc.gov/assets/counseltothemayor/downloads/Key-to-NYC-FAQ.pdf.

wearing masks during worship services, even though she has requested that they do so.

44.     Plaintiff The Actors Temple Theatre also operates as a non-denominational Jewish synagogue, as well as a theater space.

45.     The worship services occurring in Plaintiffs' theaters are not subject to the Key to NYC vaccine mandate requirements of checking vaccination status and excluding unvaccinated persons.

46.     Schools and community centers are allowed to have unvaccinated patrons attend theatrical or comedy performances, while Plaintiffs are barred from allowing these individuals to attend the same performances, with the same people, in similar spaces.

## V.     There Is No Justification for Plaintiffs' Unequal Treatment

47.     Even during a pandemic, there is no justification for treating certain kinds of expressive speech and activity more negatively based on the content of the speech or the identity of the speaker.

48.     Defendant has offered no rationale for why small venue theaters are subjected to more onerous restrictions than community centers, schools, and worship services.

49.     Any rationale Defendant might offer would not be narrowly tailored to achieve a compelling governmental interest.

50.     The same logic that led the Supreme Court to enjoin New York's unequal capacity limits for houses of worship applies with full logic and force to small theaters like Plaintiffs.

51.     The pandemic provides no excuse for the continued deprivation of Plaintiffs' rights under the First and Fourteenth Amendments. As the Supreme Court has explained, "even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020).

52.     There are no health or safety concerns that justify treating Plaintiffs' theaters and comedy clubs worse than similarly situated venues.

## VI.     The Unequal Treatment Has Harmed Plaintiffs

53.     Plaintiffs have already been adversely impacted by the Key to NYC vaccine mandate and will continue to be harmed if the City is allowed to enforce the Key to NYC vaccine mandate against Plaintiffs.

54.     Many guests come to see theatrical productions and comedy shows from outside of the City or State. These guests struggle to comply with New York's mandate and to show proof of vaccination.

55.     Since implementing the Key to NYC vaccine mandate on August 17, 2021, Plaintiff Clementine Company has been required to process multiple refunds at every performance due to the mandate, even though it posts prominently on its website and all social media posts that customers need to provide proof of vaccination.

Many tickets were purchased before Mayor de Blasio ordered this policy to take effect and other customers did not know about the policy.

56.     At every performance at Plaintiff Clementine Company's theaters since August 17, 2021, there have been angry outbursts from people who are not allowed to attend because they have either not been vaccinated or because they have forgotten, cannot find, or cannot display their proof of vaccination (such as if their phone has died).

57.     People have also attempted to sneak into Plaintiff Clementine Company's theaters using other people's vaccine cards. This has required Plaintiff to hire more staff to check ID cards, which has increased costs and slowed down the entry process for customers who can provide proof of vaccination.

58.     Enforcing the Key to NYC vaccine mandate has caused financial hardship, by requiring Plaintiffs to both hire more staff and process refunds for customers denied entry.

59.     Several staff members have quit after being screamed at, physically threatened, or even spat on by customers upset about Plaintiffs' enforcement of the Key to NYC vaccine mandate.

60.     Theater goers who are not vaccinated or who cannot show proof of vaccination (for whatever reason) are completely unable to attend a theatrical production in Plaintiffs' theaters—regardless of the medical, disability-related, religious, or other reason for their lack of vaccination. Under the Key to NYC, "[i]f a customer is unable to show proof of vaccination due to a disability," Plaintiffs "must

engage with them in a cooperative dialogue, or a good faith discussion, to see if a reasonable accommodation is possible."[3] But Plaintiffs are still required to turn these customers away, which engenders ill-will, subjects Plaintiffs to the risk of a complaint under the New York City Human Rights Law, and makes it less likely that these customers will return after the restrictions are lifted.

61.    Plaintiffs support vaccination and taking other steps to ensure that patrons are safe. For instance, Plaintiff Clementine Company requires all of its staff and performers to be fully vaccinated. It does not sell the front row of seats, to provide more distance between customers and performers. And it requires all customers to wear masks throughout every performance regardless of vaccination status. Indeed, Plaintiff Clementine Company has hired additional staff solely for the purpose of ensuring that all customers keep their masks on. On its websites and on social media, Plaintiff Clementine Company also encourages unvaccinated customers and potential customers to get the COVID-19 vaccine.

62.    The unequal treatment of theaters and comedy clubs over the past year and a half has created a stigma and a false impression that such activities are particularly unsafe. The new Key to NYC vaccine mandate perpetuates that stigma and creates a false impression that theaters are uniquely dangerous venues.

63.    In fact, theaters are uniquely safe indoor spaces. There have been few if any COVID-19 cases traced to theater audiences. In other countries, such as South

---

[3] Guidance for Businesses on Equitable Implementation of Key to NYC, https://www1.nyc.gov/assets/cchr/downloads/pdf/materials/KeyToNYC_FactSheet-Business.pdf.

Korea, theaters were opened before many other businesses because they were deemed to be safer than other places for people to congregate and more amendable to contact tracing efforts than other businesses. Theater customers are already expected to remain in their seats and observe other codes of conduct during performances and so compliance with mask mandates has been extremely high during performances at Plaintiffs' theaters.

## COUNT I

### Violation of the First and Fourteenth Amendments
### to the United States Constitution (Freedom of Speech)

64.     Plaintiffs incorporate the allegations in the preceding paragraphs.

65.     "[L]ive entertainment, such as musical and dramatic works[,] fall within the First Amendment guarantee." *Schad v. Mount Ephraim*, 452 U.S. 61, 65 (1981).

66.     Our nation boasts a long history of protecting parody and satire. "[F]rom the early cartoon portraying George Washington as an ass down to the present day, … satirical cartoons have played a prominent role in public and political debate." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 54 (1988).

67.     Constitutional rights do not receive diminished protection simply because the government wants to abridge them in an effort to curb the spread of a disease. *Roman Catholic Diocese of Brooklyn*, 141 S. Ct. at 63.

68.     Defendant's Executive Orders single out Plaintiffs' speech on the basis of its content and the identity of the speaker. Unvaccinated individuals (or individuals without sufficient proof of having been vaccinated) are barred by the Key to NYC vaccine mandate from attending a theatrical or comedy performance at one

16

of Plaintiffs' theaters, but not a worship service in the exact same venue or a theatrical or comedy performance put on at a community center or school.

69.     Because Defendant's Executive Orders are content based, strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015).

70.     Defendant's Executive Orders are neither narrowly tailored nor rationally related to achieving any qualifying governmental interest.

71.     Defendant's Executive Orders are overinclusive with respect to the government's interest in reducing the transmission of COVID-19. The precautions that Plaintiffs have undertaken—which are more rigorous than those that houses of worship and community centers are required to take in New York—are more than adequate to make the risk of transmission at least equal across these venues.

72.     Defendant's Executive Orders are also underinclusive with respect to the government's interest in reducing the transmission of COVID-19. Those attending worship services at one of Plaintiffs' theaters or theatrical performances at a community center or school have an identical risk of exposure to COVID-19 as those who attend a performance at one of Plaintiffs' theaters or comedy clubs. Yet only Plaintiffs' theatrical and comedy performances are subject to the Key to NYC vaccine mandate.

73.     Defendant has never justified this discrimination against the subject, function, and purpose of the speech central to Plaintiffs' businesses.

74.     As applied to Plaintiffs, the issuance and enforcement of Defendant's Executive Orders violate the Free Speech Clause of the First Amendment, made applicable to the states by the Fourteenth Amendment.

75.     At all relevant times, Defendant's actions were taken under color of state law.

76.     Plaintiffs have no adequate remedy at law for the deprivation of their constitutional rights.

77.     Plaintiffs will be irreparably harmed in the absence of declaratory and injunctive relief.

## COUNT II

### Fourteenth Amendment to the United States Constitution
### (Equal Protection of the Laws)

78.     Plaintiffs incorporate the allegations in the preceding paragraphs.

79.     Defendant's Executive Orders intentionally treat theater and comedy venues differently from similarly situated venues. The Key to NYC vaccine mandate requires Plaintiffs to check vaccination status and exclude unvaccinated individuals (or individuals without sufficient proof of having been vaccinated) from attending a theatrical or comedy performance at one of Plaintiffs' theaters or comedy clubs, but a worship service in the exact same venue or a theatrical or comedy performance put on at a community center or school is not subject to those same requirements. These other activities are similar to the activities at Plaintiffs' small theater and comedy venues, and they pose similar or greater risks of COVID-19 transmission.

80. The only distinction between the favored venues and Plaintiffs' is the subject, function, and purpose of the speech central to Plaintiffs' businesses.

81. Classifications that "impinge upon the exercise of a fundamental right" are "presumptively invidious" and subject to strict scrutiny. *Plyler v. Doe*, 457 U.S. 202, 216–217 (1982)

82. A statutory "classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right[.]" *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

83. The Supreme Court has made clear, "the Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 101 (1972).

84. Defendant's Executive Orders promulgating and enforcing the Key to NYC vaccine mandate for Plaintiffs' venues, as well as enforcement of those orders, deprive Plaintiffs of the equal protection of the laws guaranteed by the Fourteenth Amendment. Defendant's Executive Orders are neither narrowly tailored nor in furtherance of a compelling government interest.

85. At all relevant times, Defendant's actions were taken under color of state law.

86. Plaintiffs have no adequate remedy at law for the deprivation of their constitutional rights.

87. Plaintiffs will be irreparably harmed in the absence of declaratory and injunctive relief.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the Court enter judgment against Defendant as follows:

1.      Declaring that Defendant's enforcement of the Key to NYC vaccine mandate against Plaintiffs' small venue theater and comedy venues as compared to other similar venues violates the freedom of speech protected by the First and Fourteenth Amendments to the U.S. Constitution;

2.      Declaring that Defendant's enforcement of the Key to NYC vaccine mandate against Plaintiffs' small venue theater and comedy venues as compared to other similar venues violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

3.      Granting an order preliminarily, and thereafter permanently, enjoining Defendant from enforcing the Key to NYC vaccine mandate against Plaintiffs' small venue theater and comedy venues as compared to other similar venues, and further restraining Defendant from imposing any further health and safety requirements on Plaintiffs' small venue theater and comedy venues that are more restrictive than the least restrictive requirements imposed on any similar venues;

4.      Awarding Plaintiffs nominal damages of one dollar for the unlawful enforcement of the Key to the NYC vaccine mandate against Plaintiffs;

6.      Awarding Plaintiffs costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

7.      Such other and further relief as this Court may deem just and proper.

DATED: September 16, 2021.

Respectfully submitted,

s/ James G. Mermigis

DANIEL M. ORTNER*                    JAMES G. MERMIGIS
Pacific Legal Foundation             The Mermigis Law Group, P.C.
930 G Street                         85 Cold Spring Road, Suite 200
Sacramento, California 95814         Syosset, New York 11791
Telephone: (916) 419-7111            Telephone: (516) 353-0075
Facsimile: (916) 419-7747            Email: James@MermigisLaw.com
Email: DOrtner@pacificlegal.org

                                     GLENN E. ROPER*
                                     Pacific Legal Foundation
                                     1745 Shea Center Drive, Suite 400
                                     Highlands Ranch, Colorado 80129
                                     Telephone: (916) 419-7111
                                     Facsimile: (916) 419-7747
                                     Email: GERoper@pacificlegal.org

                                     *Pro Hac Vice pending

           Counsel for Plaintiffs